**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

MARIANNE GUSTAFSSON and
MEDICAL FLIGHT SERVICES, L.L.C.

       Plaintiffs,

v.

KAISER FOUNDATION HEALTH PLAN OF COLORADO and
HEALTH PLAN OF CONTINENTAL AIRLINES (n/k/a UAL CORPORATION),

       Defendants.

---

## COMPLAINT

---

     Plaintiffs Marianne Gustafsson and Medical Flight Services, L.L.C. for their Complaint against Kaiser Foundation Health Plan of Colorado and Health Plan of Continental Airlines, currently d/b/a UAL Corporation, states and alleges as follows:

### I.     PARTIES AND JURISDICTION

     1.     Plaintiff Marianne Gustafsson ("Gustafsson") is and at all relevant times was a resident of Aurora, Arapahoe County, Colorado.

     2.     Plaintiff Medical Flight Services, L.L.C. ("MFS") is an Arizona limited liability company with its principal place of business in Mesa, Arizona.

     3.     MFS is a fixed-wing air ambulance provider.  MFS handles all details necessary to transport seriously ill patients who are unable to fly commercially from one medical facility to another that is more appropriate to provide care to a patient.  MFS obtains medical information

necessary to transport the patient, coordinates between the sending and receiving facilities, prepares and disseminates all parties of the flight itinerary, and, ultimately, transporting the patient from one facility to another facility under the care of a team of medical professionals throughout the duration of the transport.  Typically, transport personnel include a registered nurse, a paramedic or another medical personnel appropriate to the patients' needs.

4.      Defendant Kaiser Foundation Health Plan of Colorado ("Kaiser") is a division of Kaiser Permanente which is a corporation with its headquarters in Rosemont, Illinois.  Kaiser Foundation Health Plan of Colorado is registered with the Colorado Division of Insurance and does business in the State of Colorado.

5.      The Plan is an Employee Health Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.

6.      Kaiser is a plan fiduciary as that term is defined by ERISA.

7.      Continental Airlines was purchased by United Airlines through its parent company UAL Corporation in 2010.

8.      The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and ERISA, in particular 29 U.S.C. §§ 1132(e)(1) and 1132(f).

## II.      FACTUAL ALLEGATIONS

### The Medical Services Provided

9.      Gustafsson was a flight attendant on a Continental Airlines flight that was bound for Sao Paolo, Brazil on October 8, 2010.  She was scheduled to make the return trip, but when she reported to the aircraft, she began experiencing an episode of acute respiratory failure that was not relieved by the use of an over the counter inhaler and, prior to the flight taking off to

return to the United States, the flight crew determined that she was too sick to fly and called an ambulance to transport her to a hospital.

10.     Gustafsson presented in the emergency room of Geral de Guarhulos Hospital, a "public" hospital, where she received minimal care.  Kaiser arranged to have her transported to a private hospital, Sao Luiz/Anália Franco, also in Sao Paolo on October 9, 2010.  Originally, Gustafsson was to be transported by a ground ambulance dispatched by Anália Franco with a treating physician accompanying the ambulance to Geral de Guarhulos.  When the ambulance arrived at Geral de Guarhulos, the physician determined that Gustafsson was too unstable to travel 1.5 hours in a ground ambulance.  Instead, she was evacuated to Anália Franco by helicopter.

11.     Gustafsson's son, Chris, traveled to Brazil to be with his mother.  While there, he observed her course of treatment to be unpredictable and volatile.  She would have brief improvement and then her condition would deteriorate past where she started.  Beginning on October 10, 2010, Chris received repeated assurances from Anália Franco that Gustafsson would be weaned from the ventilator "the next day" or in a "couple of days."  Her condition did not improve, in fact, it deteriorated.

12.     Gustafsson was on a ventilator for nearly a month at Anália Franco, which caused additional damage to her lungs and caused significant fluid to build up in Gusataffson's left lung and also caused a partial collapse of her left lung, all conditions that were not diagnosed or treated until she returned to the United States.

13.     Gustafsson was diagnosed with non-small cell lung cancer in 2008.  Due to this diagnosis, Gustafsson's lungs and immune system were compromised, which made her more susceptible to pneumonia more easily than the average population.

14.     In order to get Gustafsson the proper care she needed, Chris arranged to have funds withdrawn from Gustafsson's 401K to cover part of the expenses of the flight from Sao Paolo to Denver, Colorado.

15.     On November 10, MFS began Gustafsson's transport from Sao Paolo to Denver. Gustafsson arrived at Kaiser's St. Joseph's Hospital in Denver on November 11, 2010.

16.     Physicians treated Gustafsson aggressively and she was weaned from the ventilator within two days upon her admission, proving that the care she received at Anália Franco was deficient and that she needed to be transported to a hospital within Kaiser's coverage area.

17.     Physicians at St. Joseph's Hospital in Denver ultimately determined that Gustafsson suffered an episode of cardiogenic shock causing an acute hypoxic event.

### Kaiser's Handling of the Claim

18.     Chris made multiple attempts to arrange for Gustafsson's transfer home.  Kaiser represented to Chris that she did not have "transportation benefits."

19.     Chris requested preauthorization from Kaiser to cover an air ambulance flight from Brazil back to Denver.  Kaiser refused to preauthorize the service.

20.     Ultimately, Kaiser also communicated the denial of preauthorization to Gustafsson via letter dated November 9, 2010 indicating that the service is specifically excluded

from her health plan services because it was not an emergency and she was located outside of the service area.

21.     Neither Gustafsson, nor MFS appealed the denial of preauthorization.

22.     Instead, MFS submitted a HCFA-1500 Claim form for the services MFS provided.

23.     MFS billed Kaiser for ground ambulance transportation, for the base rate charge for ambulance services, for the mileage from Sao Paolo to Denver, and for a specialty care charge to providing higher than paramedic level services to Gustafsson on the flight.

24.     MFS' claim was for a total of $401,785.00.

25.     Kaiser denied the claim in an explanation of benefits remittance ("EOB") form dated March 22, 2011.

26.     The EOB listed the basis of the denial as being "out of plan" and also listed that the services were not covered by the Plan.

27.     After the initial denial, MFS attempted to acquire the necessary documents to appeal the determination.  MFS, through attorney Michael Ward, sent a request for relevant documents pursuant to 29 C.F.R. § 2560.503(h)(2)(iii) and .503(m)(8).

28.     MFS made multiple follow-up calls related to the document request during which Kaiser advised MFS representatives that the request "was not in the system."  Ultimately, on September 1, 2011, MFS had to re-send the request for information.

29.     On September 9, 2011, Kaiser's records department confirmed that it received the request and that it would be processed in 10 days.

30.     By October 12, 2011, MFS had still not received the documents requested.  A call to Kaiser revealed that the request "did not show in the system" and that the person to whom the request was addressed would call MFS to clarify the information requested.  During this call, Kaiser advised MFS that it had requested a "corrected claim" on August 16, 2011.  MFS never received this request, and Kaiser never returned MFS' call.

31.     On October 12, 2011, MFS contacted Kaiser for the documentation and clarification of the denial.  Again, Kaiser advised MFS that "there was nothing in the system." MFS also asked for a full written denial consistent with ERISA's regulations.  Kaiser employee Oveda advised MFS that it should fax the request directly to her, but that the "only explanation" Kaiser provides is the EOB.  MFS asked for directions on how to appeal and Oveda said the appeal instructions were sent with the EOB, but they might not be sending them.  MFS sent the request for information again.

32.     On November 1, 2011, MFS submitted an updated claim form and request for a denial that explained the basis for denial.

33.     On November 16, 2011, MFS contacted Kaiser to ascertain the status of the corrected claim and its request for documents.

34.     MFS did not receive the denial letter until it was requested on November 11, 2011.

35.     On November 16, 2011, MFS representatives spoke with Kaiser employee Samuel D. Wilson.  Wilson advised MFS that Kaiser documented that it told Chris it would not pay for the flight and that he understood that they were financially responsible for the flight. Wilson refused to explain the denial and, instead, just repeated that it was not covered.  Wilson

did acknowledge that Gustafsson could appeal and admitted that she would "need the documentation." Beyond that, Wilson was of no assistance.

36.   MFS filed a grievance with Kaiser on November 16, 2011.

37.   Thereafter, MFS made numerous contacts to Kaiser to determine whether the grievance was received. On November 29, 2011, MFS spoke with a Leina at Kaiser who indicated that she would send an inquiry to the appeals department, a response to the inquiry would take about 7-10 days and that Kaiser would call back.

38.   On December 2, 2011, Sheeneka at Kaiser again advised MFS that she could not "see any grievance information" and MFS was transferred to member services. Member services representative Ricky provided MFS with the appeals department phone number indicating that only the appeals department can tell MFS whether the grievance was received. MFS staff left a voice mail with the appeal department.

39.   On December 5, 2011, Stacy from the appeal department returned MFS' call and told MFS the opposite of what member services had told MFS on December 2, 2011. Stacy advised that MFS needed to call member services to determine whether Kaiser received the grievance.

40.   The same day MFS called member services and spoke with Heather who did not ever advise whether Kaiser received the grievance. Instead, Heather indicated that she would send the original claim "back over" to be adjusted. Heather also advised MFS that she would include a link on the request to make claims aware that MFS was seeking additional information.

41.   On December 8, 2011 and December 15, 2011, MFS learned in calls to Kaiser that the claim was still processing. On December 16, 2011, Kaiser acknowledged that there were

several inquiries pending on the claim and that it would send the issue to provider escalation. Kaiser advised MFS to call back in one week.

42.     MFS called Kaiser again on December 23, 2011.  Representative April C., whose manager was Lynn, agreed to place the claim on her "urgent list" and that MFS would have a response by the following Wednesday at the latest.  And that if MFS did not hear back, it should contact Kaiser again and request that someone send April C. an email.

43.     On December 28, 2011, MFS contacted Kaiser again.  This time, MFS spoke with a representative named DeAnn who said "she did not know April C. or her lead, Lynn."  DeAnn represented to the MFS staffer that the claim was denied on February 10, 2011 because the claim was work related and preauthorization was declined.

44.     Neither MFS nor Gustafsson received any EOB that contained this information.

45.     Ultimately, on January 20, 2012, MFS was advised *telephonically* by Stacey at Kaiser that Kaiser was upholding the denial because Samuel Wilson stated that the family arranged a private transport.

46.     Kaiser refused to respond to MFS's document requests on Gustafsson's behalf. Kaiser's refusal to provide the documents prohibited Gustafsson and MFS from obtaining a full and fair review of the claim.

47.     Kaiser's and the Plan's denial does not adequately contain the basis of the denial, adhere to time limits applicable to decisions on claims and appeals, provide documents requested under 29 C.F.R. § 2560.503-1(h)(3)(ii)-(iv), or provide other information required under ERISA claims regulations.

48.     Gustafsson and MFS have satisfied all of the jurisdictional prerequisites, including exhaustion of administrative remedies, to filing a claim in federal court.

### III.     FIRST CLAIM FOR RELIEF

**Recovery Of Wrongfully Denied
Insurance and Plan Benefits**

49.     A participant is entitled to recover benefits under the terms of the Plan, to enforce rights under the terms of the Plan, and to clarify rights to future benefits under the terms of the Plan.  29 U.S.C. § 1132(a)(1)(B).

50.     A civil action may be brought by a participant (A) to enjoin any act or practice which violates any provision of Title I of ERISA or the terms of the Plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of Title I of ERISA or the terms of the Plan.  29 U.S.C. § 1132(a)(3).

51.     Gustafsson reasonably expected that the services were covered and met any applicable requirements under the Plan and that benefits would be provided.

52.     Despite having coverage for air ambulance services under the Plan, Kaiser and the Plan improperly denied benefits in breach of the Plan.  This breach was arbitrary, capricious, an abuse of discretion, not supported by substantial medical evidence and was clearly erroneous and in violation of § 503 of ERISA.

53.     Kaiser's decision was tainted by a structural conflict of interest that requires that its decision be reviewed with skepticism.

54.     The Plan's procedural violations of ERISA and its regulations also require that the decision be reviewed with increased skepticism.

55.     Gustafsson is entitled to declaratory, injunctive and other appropriate equitable relief including, but not limited to, an order enjoining the Plan and the Plan Administrator from failing to follow ERISA claims procedures, together with attorneys' fees and costs.

## IV.     SECOND CLAIM FOR RELIEF

### Breach of Fiduciary Duty

56.     All paragraphs are realleged and incorporated by reference.

57.     Kaiser is a named fiduciary under the terms of the Plan and is a Plan Fiduciary as that term is defined by ERISA.

58.     Upon information and belief, Kaiser's ordinary business practice often results in Kaiser ignoring the time deadlines contained in the governing regulations on health insurance claims and appeals throughout the United States.

59.     During the handling of this claim, Kaiser repeatedly violated the regulations governing the handling of health insurance claims and appeals.

60.     Kaiser ignored Gustafsson's appointment of MFS as her authorized representative.

61.     ERISA § 502(a)(3) provides that a civil action may be brought by a participant to enjoin any practice that violates the terms of the plan or the statutory obligations or to obtain other appropriate equitable relief to address violations or to enforce any provisions of the statute or the terms of a plan.

62.     Accordingly, § 502(a)(3) allows Gustafsson to bring a claim against Kaiser for breach of fiduciary duty.  As a result of Kaiser's breach of fiduciary duty, Gustafsson is entitled to recover appropriate equitable relief.

63.     Relief in the form of monetary compensation – sometimes called a "surcharge" – for a loss resulting from Defendants' breach of fiduciary duty may be awarded under section 502(a)(3).

64.     A fiduciary under ERISA can be surcharged under § 502(a)(3) upon a showing of actual harm by the plan participant or beneficiary.

65.     As a direct result of Kaiser's breach of its fiduciary duty, Gustafsson suffered actual harm.

**WHEREFORE,** Gustafsson and Medical Flight Services, L.L.C demand judgment against Kaiser and the Plan as follows:

A.     Declaring that Gustafsson is entitled to payment of services rendered to her by MFS in the amount of $401,785.00 as a result of Defendants' violation of the terms of the Plan and ERISA by failing to pay for the services MFS rendered to Gustafsson;

B.     Ordering Defendants to reimburse Gustafsson for all out-of-pocket expenses incurred as a result of Kaiser's unreasonable interpretation of the Plan Regulations as equitable relief;

C.     Declaring that the Plan violated ERISA's claims procedures an disclosure requirements under ERISA § 503;

D.     Enjoining Defendants to cease and desist from violating ERISA and the terms of the Plan;

E.     Awarding appropriate equitable relief;

E.     Awarding pre-judgment interest at the highest rate allowable by law;

F.      Awarding reasonable attorneys' fees and costs pursuant to state law and

ERISA § 502(g); and

G.      Awarding such other and further relief as the Court deems just and proper.

Dated this 8th day of January, 2014.

THE COUNTERS FIRM, P.C.

*s/Lisa Counters*

_____

Lisa Counters
16421 N. Tatum Boulevard, Ste. 207
Phoenix, AZ  85032
(602) 490-0030
(888) 683-8397 (Fax)
*lisa@countersfirm.com*

MCDERMOTT LAW, LLC

*s/ Shawn E. McDermott*

_____

Shawn E. McDermott, #21965
2300 15th Street, Suite 200
Denver, CO 80202
(303) 964-1800
(303) 964-1900 (fax)
*shawn@mcdermottlaw.net*

Plaintiffs' Addresses:
Marianne Gustafsson
8026 S. Algonquin Court
Aurora, CO  80016

Medical Flight Services, LLC
4858 E. Baseline Road, Suite 101
Mesa, Arizona 85206